How are you? How are you, Mr. Bush? In fact, it only applies to information that would be a consumer report, but for the exclusion of affiliate sharing. All Congress stood there and said, okay, if you're going to exchange information on affiliates that bears on, that is medical information, we're not going to exclude that from the protection of the CCRA. We are going to regulate it as a consumer report. But it still contains a phrase that would be a consumer report, but for the exclusion of affiliate sharing. Can you point to me where in the statute medical information is specifically regulated? Mr. Bruce alluded to it, but he didn't point me to a specific part of the statute. It's regulated under the FAFSA by changing the definition of a consumer report. A definition of it, which is 1681A. 1681A, that's right. So it's all here in 1681A, which I have here in front of me. But it doesn't say anything about health reports. It's just sort of there. It's included under the other information, under 2A, triple I, communication of other information, as you say, of non-experienced information. Now, there's a further provision that I believe is in 1681A that further, that was added in 2003, that defines, let me go back to. It's 1681AI, it's medical information. That's where medical information is defined. Oh, okay. What it does is state that, okay, we have excluded, Congress has excluded the definition of a consumer report. We have therefore excluded it from regulation under the FCRA. However, for medical information, we are going to add, like the provision that Judge Riley just referred to, Congress has said we are going to add medical information back into the definition of a consumer report. He didn't want to share them on affiliates because he wanted to protect it under the FCRA. But again, it's information that would be a consumer report but with exclusion for affiliate sharing. And there is no, although the points are before plain meaning of interpretation, their plain meaning depends on going to other parts of the statute or even outside the statute in order to limit the preemptive effectors. If their interpretation of this doesn't share the preemptive provision and that the federal agencies who filed a limited brief were expected, then states would also be preempted from regulating sharing among affiliates of any information on a human person. That is because that's what 1681B-2 says. It says exchange information on persons of all ages. Counsel, let me approach this from a little different way. There are two things that are going on here. The first is that we are regulating the sharing of consumer information. That's the original 1970 Act. There's a second important development, sort of a banking development here, sort of a banking-specific development, and that is the opening up to banks of allowing them to sell insurance and securities and a whole lot of other things that they were always prohibited from selling. So what we've done is we've really expanded the kinds of affiliates that banks can have. Now, why isn't the preemption provision here more of a banking provision, that is one that protects that bank-affiliate relationship to which Congress has preempted the states from regulating the sharing of any kind of information between a bank and its affiliate in order to protect this whole new range of banking and not just simply a consumer provision? Because if Congress spoke specifically about, remember, of course, that the FCRA relates to credit reporting, period. If Congress spoke specifically to the problem that Brian was mentioning in the Groundless Viable Act, Title V of the Groundless Viable Act says that financial institutions, banks, insurance companies, and securities firms cannot share information with third parties without providing consumers the right to opt out. That same title, Title V, also specifically reserves the right of the states to enact financial privacy measures that are more protective of privacy than what Congress has done. And we do not argue that that savings clause answers appellant's argument here regarding the FCRA preemption clause. What we do argue is that if we are to try to look at subsequent legislation and divine congressional intent back in 1996, GLBA would seem a lot more applicable because it specifically regulates financial information privacy, which is what SB1 regulates. GLBA would be much more relevant than anything in the FACT Act. The FACT Act, which is the 2003 amendments referred to by Mr. Bruce, the FACT Act did not change the affiliate sharing preemption provision. It did not broaden it. They did not clarify it. It did not change it. So statements made by individual senators on the floor about their opinion of the preemptive effect of a preemption provision passed in 1996 are certainly not an adequate basis on which to divine the meaning and the domain of the preemption provision that is at stake in this case. I would also suggest that we should not infer anything from the fact that, from another provision that appellants have cited in their brief, which is that the FACT Act did say that the marketing opt-out provision would be considered to be a requirement or prohibition on affiliate sharing. And therefore, the states are preempted from enacting any restrictions on the use of information obtained from affiliates. But that is only use. SB1 does not in any way regulate use. It regulates only sharing, only disclosures. Consequently, the failure of Congress to say anything further or to include SB1 on the list of statutes that were preserved does not mean anything. The list of statutes that were preserved were all statutes relating to credit reporting. California's statute was preserved, for example, with respect to credit scores. And the same Congress did that, one presumes, and I think there is some support for this, that Congress did that because those statutes on credit reporting were already in place, they were already working, and so Congress was going to allow those to be grandfathered in. The same thing happened with respect to the Vermont credit reporting statute in 1996. Congress in 1996 said when it preempted the states from regulating affiliate sharing for purposes of the FCRA, it also exempted from that and grandfathered in the Vermont credit reporting statute. That is a credit reporting statute. It is not a financial privacy statute. And all of the statutes that were grandfathered in were credit reporting statutes, and consequently I believe there is no inference to be drawn by the omission of SB1 from that list. I want to leave time for ---- The counsel will start tackling you. I will. In conclusion, I would like to say that a preemption provision in the FCRA that makes sense in the context of that statute should not be read to preempt state regulation of affiliate sharing in all contexts by any person covering all kinds of information, including medical information. Thank you. Good afternoon, Your Honors. My name is Kim Gay, and as counsel represented, I represent the Department of Corporations and the Department of Financial Institutions in this matter. I see that the court has had a few questions, so I'll address my comments directly to those questions. Specifically, Judge Fletcher, you asked what does the exchange of information mean, and I propose to you that the only way for this court to make that determination is to read the statutory scheme in totality, while paying special attention to the amendments in 1996 when that preemption provision was added. Well, when the U.S. Congress uses different words, how can you read them saying, well, you know, you read them together as if they were the same? They use consumer reports when they want a consumer report, and they use information when they want information. They could have used only one term, but they did use different terms. That's correct, Your Honor. They did use different terms. In the other preemption provisions cited by the appellants in this case, they used the term consumer reports. In 1681TB2, they specifically did not use the term consumer report. That is because the information shared among affiliates is expressly excluded from the definition of a consumer report in 1681A. Let me tell you exactly what my concern is, and I think you're going to have trouble with it. But if you don't, I want to hear why, because here's where I come out. Most of this case seems to be answered to me in 1996, because in 1996 we get the passage of what is now 1681T, and we also get the passage of what is now 1681A, both in 1681TB1 and B2, the preemption clause that's specifically addressed in various provisions to consumer reports and in sub 2 to information. We also get passed at the same time the definition of consumer report and the exclusion of certain information, using the word information, from the definition of consumer report. And it seems to me, and I guess I'm reinforcing Judge Kaczynski's question, it seems to me a fairly obvious thing. They're preempting consumer reports with respect to the definition of consumer report, and they're preempting information with respect to what shows up in 1681AD2. All these exclusions from the consumer report, they keep using the word information. Why is that information in 1681A2A, why isn't that what they mean by information when they're in the preemption clause? Because they expressly excluded it from the definition, therefore it wouldn't make sense to use the term. But the preemption clause doesn't say consumer report. It says information. And information is what is being excluded from consumer report, but information is precisely what's being the subject of this preemption clause. But because it's been excluded in the 1681A, it no longer meets the definition. Therefore, it wouldn't make sense to say that. So that's why you've got a separate preemption clause. You've got one preemption clause for aspects of consumer report, and you've got another preemption clause for information. I respectfully disagree. Okay. Yeah, tell me why. Because that's where I start from. And I think that's the point I was trying to make, Your Honor. And hopefully I can make it more succinctly. That would be that the information was excluded from the definition. Therefore, it would not make sense, in fact, it would be incongruent for Congress to use the term consumer report in 1681TB2. Perhaps they could have said information that would be a consumer report but for the exclusion in 1681A. Unfortunately, we don't have that here. They've already excluded it from the definition. Therefore, it does not make sense that they would say restrictions or prohibitions related to the sharing of a consumer report. It's not a consumer report because it's excluded from the definition. Therefore, it made clear to the states that they were not to treat information shared among affiliates as a consumer report also. Counsel, why doesn't the term in 1681T, the use of the word information, unqualified, include information that in 1681A might be a consumer report or that it might also be qualified information or the term information as qualified, further qualified, and excluded from the definition of consumer report. In other words, we have two categories of things. One is that we have something that's called a consumer report. And we have certain classes of information that are excluded from that definition that would otherwise fall within the definition of consumer report. Those include that experience information and non-experience information, which is where Congress used the term information and then qualified it very specifically. By the time you get back to 1681T, Congress has used the word information without qualifying it, which suggests that it covers a broad category of things, including experience and non-experience information and consumer reports. So why don't we just take Congress at its word and have the preemption clause include all kinds of information? Because to do so would give an intent and purpose to the statutory scheme not intended by Congress and would exceed the scope and breadth of the Fair Credit Reporting Act in general. This statute needs to be read in... Why would we have to be limited to the Fair Credit Reporting Act? Why couldn't Congress say we're going to protect relationships between banks and their affiliates? Some of this is information that goes to the Fair Credit Reporting Act. Some of it may be beyond that, so be it. Well, Your Honor, I respectfully submit that if Congress had intended that, they certainly could have amended the congressional findings and statement of purpose bound at 1681A of the Fair Credit Reporting Act to say not only do we intend to regulate information sharing that constitutes consumer reports and credit reporting, but now we also intend to regulate affiliate sharing among financial institutions. Congress didn't do that. The legislative history, the language of the statute, and all of the amendments read together indicate that it is limited in its breadth and scope and that the intent of Congress was to send to the states the message that they were not to treat information shared among affiliates as credit reports. But it's clear, despite what a general statement of purpose says, it's clear that after 1996, in fact, the statute does regulate information sharing of non-consumer reports. I respectfully disagree with that, Your Honor. What in the world is 1681A to doing if not regulating the exchange of non-consumer report information? Exempting that information from the definition of a consumer report. But it's also regulating, for example, any communication of other information provided that it's clearly and conspicuously disclosed and so on. There's clear regulation of that kind of information exchange. Well, it explains to the affiliates how they are to reach that exemption. In other words, if you comply with these provisions, then you are exempted from complying with the Fair Credit Reporting Act. However, if you do not, then you have to meet the more stringent requirements. You're exempted from complying with things that are categorized as consumer reports. Nonetheless, you have to comply with this disclosure and opt-out provision. That is correct. So it regulates it. I think we could quibble all day over whether or not that's regulation. I would say that it certainly ‑‑ It affects behavior with respect to this category. Admitted, Your Honor. Another question that was posed by the Court was with regard to the Graham-Leach-Bliley Act and whether or not that provision in fact places any requirements with regard to affiliate sharing. And I would propose to you that it does. And the citation for that is 15 U.S.C. Section 6803, wherein the GLBA places a requirement upon financial institutions to disclose to their customers their practices and policies with regard to information sharing among affiliates. I note that I'm very close to being out of time, Your Honors. If you have any questions, I'd address that. I'm sorry? You're actually over your time. I have 25 seconds here. Oh, you're right. I apologize. I have 28. Are there any further questions? Thank you. Thank you. Let me give you the citation. I promised a citation to the Graham-Leach-Bliley statute, Your Honor. 15 U.S.C. Section marks 6802 and 6803. 6802 and 6803. Okay. I only want to make a few points, and it won't take five minutes. You haven't got five minutes. You've only got three minutes. Three minutes. Ms. Howison's remarks that we have to worry about the application of this in all contexts is not why we're here today. We're here today to decide one thing and one thing only, and that's whether SB1 is preempted. And all these other important and interesting questions really can be left for another day. It's important also to correct a small mistake on her part, an honest one, I know. The FACT Act did expand. It did expand the preemption clause by making it clear that limitations on the use of information were preempted. That was new. They also made the act permanent. It would have sunset on January 1 of 2004. These are changes in the law. Well, I'm not sure I agree with your characterization. Yes, in 2003, there are certain restrictions placed upon use. I mean, the regulation changes. But that doesn't necessarily change the scope of what's preempted in terms of what the State may do. Well, in fact, it does, because that's exactly what the statute did. And let me quickly read it. This is so-called user requirements. It's 1681S3, and it's over on sub C, user requirements. Requirements with respect to the use by a person of information received from another person, et cetera, et cetera, is a restriction and prohibition within the meaning of the preemption clause. That was a broadening. My point is this. These comments of the legislatures on the FACT Act were not gratuitous observations by a subsequent Congress about an earlier Congress's action. These were an understanding of Congress as it was changing the law. I think I'd like to end on this note. I don't think any of your honors were on the panel that granted the motion to expedite that we filed, and we got an expedited briefing schedule and very much appreciate the expedited argument we've received today. But for all the reasons that were recited in that motion, and I could go into them if you'd like me to, we ask this Court to promptly reverse the district court and declare that SB1 is preempted. If there are no further questions, I'll stand down. Okay. Thank you. Thank you very much.  Thank you.
judges: Kozinski, W. Fletcher, Bybee